IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA

 vs.                                4:04CR00189 (4)     GH

DEXTER ROSS

## Proposed Findings and Recommendation

## Instructions

This recommended disposition has been submitted to United States District Judge Howard.

The parties may file specific written objections to these findings and recommendations and must

provide the factual or legal basis for each objection.  An original and two copies of the objections

must be filed with the Clerk no later than eleven (11) days from the date of the findings and

recommendations.  A copy must be served on the opposing party.  The District Judge, even in the

absence of objections, may reject these findings and recommendations in whole or in part.

## Background

The defendant, Dexter Ross, was indicted on August 4, 2004 for possession of cocaine,

possession of a firearm by a convicted felon, conspiracy to distribute approximately 120 pounds of

marijuana, and the possession thereof.  Martin Ruiz, Moises Moreno and Erica Gurrostieta were also

named in the possession and conspiracy counts.  Trial is set before the Honorable George Howard,

Jr. on February 27, 2006.

1

## Suppression

Defendant Ross has filed a Motion to Suppress (DE# 82).  Hearings were held thereon on

January 10, 2006 and January 13, 2006.  Specifically, the defendant seeks suppression of those items

seized from his home, to-wit, a pistol, ten grams of cocaine base, a small bag of marijuana, two sets

of scales, a vacuum sealer and miscellaneous documents.  Defendant avers that:

(1) The warrant is not supported by probable cause;

(2) the warrant failed to set forth with particularity the things to be seized;

(3) the warrant failed to authorize a night search;

(4) the scope of the search exceeded that authorized by the warrant; and

(5) generally, the affidavit and warrant do not satisfy Rule 41.

No brief in support of the motion was filed.  The burden is on the defendant to demonstrate

the alleged invalidity of the warrant.  2  Hall, *Search and Seizure* §45.43.

The warrant in question was issued by Arkansas Circuit Judge Paul Danielson[1] at a point

distant from the officers and was faxed to them by Judge Danielson upon completion.  It was issued

at 8:00 p.m. on July 10, 2004.  Federal and State officers participated in the search; thus federal

requirements must have been met. *U.S. v. Tavares*,  223, F3d 911 (8th Cir. 2000).

As to time, the testimony and exhibits established that Judge Danielson signed the warrant

---

[1]  The jurist takes judicial notice that Judge Danielson presides in Arkansas' 15th Judicial
Circuit, which covers Conway, Logan, Scott and Yell counties.  Both Morrilton and Plumerville
are in Conway County, which is, in turn in the Federal Eastern District of Arkansas.

at 8:00 p.m. and immediately faxed it to Federal and State officers at the Plumerville Police Department. Those officers promptly reached other officers on site at the defendant's residence to have them secure the premises, then proceeded there to commence the search. Unquestionably, then, the search began sometime between 8:00 p.m. and 9:00 p.m. Rule 41(2)(B) of the Federal Rules of Criminal Procedure defines "daytime" as between 6:00 a.m. and 10:00 p.m.; thus the search that occurred was a daytime search. No heightened showing was needed. Defendant's (3) (that the search was invalid as unauthorized to occur at night) is without merit.

The two page affidavit of DEA Special Agent Jon Vannatta[2] sets forth adequate probable cause. It was obligatory on Judge Danielson, when presented with Special Agent Vanatta's affidavit,[3] to view it with a detached and neutral eye in a practical, common sense manner to make an independent determination of probable cause. He did so. Defendant's (1) (that the warrant is not supported by probable cause) has no merit.

### Findings

From the charging instruments, testimony and exhibits, this jurist finds the facts which follow. DEA agents in Tyler, Texas were contacted by a "reliable confidential source" (hereinafter "CS") on July 10, 2004 and told that the CS had been contacted and engaged by martin Ruiz (a co-

---

[2] Special Agent Vannatta was on active duty overseas with the United States Army at the time of the hearings and was thus unavailable for testimony.

[3] Testimony at the hearings established that Judge Danielson, after swearing in Special Agent Vanatta by telephone, considered only the information contained within the four corners of the affidavit. No testimony or information was taken by telephone.

defendant) to assist in delivering 100 pounds of marijuana to Dexter Ross. The CS had delivered forty pounds of marijuana to "Dexter" (last name unknown) in Arkansas six months prior, and later identified him from a photo. This load was to be transported in the CS's truck, and he would be accompanied by Ruiz in a silver Suburban, Texas license number W65XVW.

On this same date, the CS proceeded up Interstate 30 toward Arkansas, with Ruiz and his girlfriend, Erica Gurrostieta, in the accompanying silver Suburban. Drug Task Force agents were actually able to meet with the CS (en route at Texarkana) and confirm that his pickup truck contained a load of marijuana. The vehicles continued up Interstate 30 into Arkansas, and were intercepted surreptitiously by other officers who had been alerted to their imminent arrival. At the Morgan exit from Interstate 40, the silver Suburban containing Ruiz and Gurrostieta met with Moises Moreno, who was driving a pickup truck. Ruiz got into the Moreno vehicle and the two of them proceeded to a Kroger parking lot in nearby Maumelle, Arkansas. There they met the CS (in a truck containing the load of marijuana), and both vehicles moved to a subdivision. At that point the vehicle occupants began transferring the marijuana into Moreno's truck, and were arrested in the act.

Meanwhile, Erica Gurrrostieta had proceeded in the silver Suburban up Interstate 40 to Plumerville, Arkansas, where she pulled off of the Interstate into a parking lot and there met the defendant, Dexter Ross. Dexter Ross had arrived in a blue and white pickup. After a short visit, Ross and Gurrostieta left in their respective vehicles and proceeded to a residence in Morrilton

4

occupied by Martin Ruiz' sister. Several surveillance officers followed.[4] Gurrostieta pulled into the driveway at 108 Wilson Street in Morrilton, then begin honking her horn incessantly. Defendant Ross hesitated and appeared to be following Gurrostieta into the driveway, then changed course and took off "fast." (One officer estimated that Ross was driving 45 to 50 mph through a residential neighborhood.) A state trooper, Corporal Dewayne Luter, joined the pursuit and stopped Ross after a short distance. Ross was detained by the trooper; a pat-down for arms yielded no weapons but $900.00 in cash was found. Ross would not consent to a search of his house; a DEA agent and a Conway County Deputy Sheriff pulled up; Trooper Luter, DEA Agent Vanatta and Plumerville Police Chief Bill Hartman went to the Plumerville Police Department to prepare an affidavit for search warrant and to apply to Circuit Judge Paul Danielson for one by telephone and facsimile.

Several officers went to Ross' residence in Plumerville to secure it. These officers remained outside until they received word, shortly after 8:00 p.m., that Judge Danielson had issued a search warrant. They then entered the premises, for the sole and express purpose of seeing to it that no one was inside. DEA Special Agents Rich Salter and John Vanatta, accompanied by Arkansas State Police Corporal Dewayne Luter, arrived shortly with the search warrant and commenced the search.

The search produced two digital scales, a baggie containing 10 grams of crack cocaine, a baggie containing a small amount of marijuana, a vacuum sealer and miscellaneous documents.

---

[4] By this point, several law enforcement agencies had joined in the surveillance and apprehension of these defendants. Lt. Marcus Paxton of the Little Rock Police Department was among them and testified at the suppression hearing.

The warrant authorized the search of the premises and curtilage of Dexter Ross at 90 Highway 92, for "documentary evidence, documentary evidence to include, but not limited to phone records, drug ledgers, U.S. currency, and computers, *and other items used in furtherance of a Drug Conspiracy* in violation of the Controlled Substances Act." (Italics supplied.)

## Recommendations

The jurist undersigned concludes that the language used by Judge Danielson to define the particularity of the search and its breadth is sufficient to cover the items seized. While the description does not specify illegal drugs nor the accouterments of distribution, such items fall within "other items used in furtherance of a Drug Conspiracy in violation of the Controlled Substances Act." In other words, the phrase can be permissibly used in the context of an illegal drug investigation, which is precisely what the officers were pursuing. The case had already yielded over 100 pounds of marijuana earlier in the day, and Judge Danielson had been so informed by the affidavit for search warrant. *Andresen v. Maryland*, 427 U.S. 463 (1976); *U.S. v. Reeves*, 210 F.3d 1041 (9th Cir. 2000). Further, it is axiomatic that the officers conducting a lawful search may seize evidence in plain view. Clearly, scales, baggies, and a vacuum sealer are evidence of drug distribution. *U.S. v. VanDreel*, 155 F.3d 902 (7th Cir. 1998).

This jurist concludes, then, that Defendant's (2) (warrant lacking in particularity) and Defendant's (4) (search exceeded the scope of the warrant) should fail.

Defense counsel has made much ado (though not made a point of his motion) about the location of the bag of crack cocaine seized from a doorsill above the inside of a pantry door.

6

Counsel has maintained that the search was "unreasonable" because there is a question whether the bag was resting on the sill in plain view, or was covered by a panel that officers removed to make the discovery. The pivotal question, however, is whether items within the scope of the warrant could be concealed in the space. The magistrate judge concludes that, indeed, documents of all sorts could have been secreted in the space in question, and concludes further that the space could be accessed by officers without destruction of the defendant's property. Disassembly is not destruction. It was thus within the scope of the search authorized by Judge Danielson to access the space, and appropriate to seize the illegal drugs found there. *De minimus*, necessary damage and disarray does not rise to the level of a constitutional violation. *Soichet v. Toracinta*, 111 F3d 124 (2nd Cir. 1997); *U.S. v. Becker*, 929 F.2d 442 (9th Cir. 1991); *Schertz v. Wanpaca County*, 683 F. Supp. 1551 (E.D. Wisc. 1988).

A word is necessary about the pistol, found in Ross' trailer, that is the subject of Count 4 of the indictment (felon in possession of a firearm). The testimony at the hearings established that officers administered the *Miranda* rights to the defendant at the Morrilton police station following his arrest. Ross stated, *inter alia*, that officers would find crack cocaine, marijuana, two sets of scales and a gun at his residence. Having completed the search without finding a gun, Special Agent Vanatta returned to the station and so advised Ross. Ross signed a consent to search form, then accompanied officers to the trailer–residence and helped them locate the firearm in a slit in his mattress. Any gap that occurred between the *Miranda* warnings and the colloquy that resulted in the consent to search and the seizure of the pistol simply did not invalidate the earlier warnings. See

7

*U.S. v. Boyd*, 180 F.3d 967 (8th Cir. 1999).  The magistrate judge therefore concludes that the subsequent conversation with Ross and the seizure of the pistol were constitutional.

Defendant's final point (5) (the warrant doesn't meet the requirements of Rule 41) has neither been briefed nor addressed to allege specified defects.  It is not the function of the judiciary to erect straw men for the defense and then deal with them substantively. See *U.S. v. Zannino*, 895 F.2d 1 (1st Cir. 1990) *cert. denied*, 494 U.S. 1082 (1992).  The jurist undersigned therefore declines to address this point.

WHEREFORE, it is recommended to the district judge presiding, that the Motion to Suppress (DE# 82) be denied in all respects.

Dated this 13th day of February, 2006.



                                                        UNITED STATES MAGISTRATE JUDGE